FLEMING v. JOHNSON, ET AL.

PROBATE COURTS—*Jurisdiction.*—It was competent for the probate courts, under the Constitution of 1836, and act approved December 24, 1846, to order guardians to sell the real estate of their wards, at public or private sale, as the court in its discretion might direct.

COURTS—*Discretionary power of*—When, by constitutional or legislative authority, discretionary power is conferred upon a court, its exercise is a judicial act, and cannot be controlled by a superior or appellate court on appeal, unless it has been grossly abused.

SALES—*Confirmation cures defects.*—The confirmation of a sale, made in pursuance of an order of court, cures all defects or irregularities, unless it is attacked directly.

ADMINISTRATOR'S SALE—*When presumed regular.*—Probate courts are superior courts, and the regularity of their proceedings are presumed; and when the validity, derived under a guardian's or administrator's sale, comes in question, in a collateral suit, this court will only look to see if the probate court had jurisdiction—unless error be patent upon the face of the proceeding.

PURCHASERS AT ADMINISTRATOR'S SALE.—Where the probate court has jurisdiction of the subject matter, the papers and proceedings in the case upon which an order of sale is had, are presumed to have been regular, and a purchaser, at a guardian's or administrator's sale, will not be bound to look further back than the order of the court, or to inquire as to its mistakes.

GUARDIANS—*For what appointed.*—A guardian for an *infant* is appointed solely because of the infancy, and no inquiry is made as to sanity.

*Appeal from Scott Circuit Court.*

HON. E. D. HAM, Circuit Judge.

*Garland & Nash*, for appellant.

It is submitted, that the appellant proved every thing in the court below, that the law required of him. See *Daniel v. Lefevre, 19 Ark. 201.*

The probate court had no power to grant an order of sale to be made, unless publicly. *Gould's Dig. chap. 81, sec. 17, et seq; Ib. chap. 4, sec. 182, et seq ;* and all proceedings of this kind

must be in strict accordance with law.    *18 Ark. 449; 19 ib. 516*;
*Probate Court Law and Practice, by John W. Clinton, p. 470; Ib.*
*286–290.*

Jurisdiction of another court must always be shown by the
record from that court.    *2 Ark, 60; 3 Ib. 532; 1 Greenleaf Ev.*
*540–1.*

*English, Gantt & English,* for appellees.

The constitution of 1836 and the act of December 23, 1846,
gave power to the probate court to grant orders to guardians
to sell the real estate of their wards, and left the manner and
terms of such sales to the discretion of the court.    See *Art. VI.*
*Sec. 10, Const. 1836; Act 23d December, 1846*; and that discre-
tion could not have been controlled by a superior court, in a
direct proceeding, on appeal, unless it had been grossly abused.
See *Redmond, guard v. Anderson, 18 Ark. 451; George v. Norris,*
*23 Ark. 129; Sadler v. Rose, 18 Ark. 600; Nelson & wife v. Green,*
*22 Ark. 367.*    Much less could a sale, ordered in the exercise of
that discretion, and completed, and confirmed by the court, as
in this case, be declared void in this collateral proceeding.
*Borden v. State, 6 Eng. 519; Sturdy v. Jacoway, 19 Ark. 516;*
*Marr, ex-parte, 7 Eng. 84; Rogers v. Wilson, 6 Eng. 507; Ben-*
*nett v. Owen, 6 Eng. 177; Thompson v. Tolmie, 2 Peters, ·157;*
*Grignari's Lessee v. Aston, 2 How. U. S. 338,* and cases cited, full
and in point.    *Schnider et al. v. McFarland et al., 4 Wend. 139;*
*Atkins and wife v. Kinnar, 2 Wallace U. S. 210; Jackson ex dem.*
*McFail et al. v. Crawfords, 12 Wend. 533.*

The probate court had power to make an order for
*private* sale, where the statute left the manner of the sale to its
discretion.    See *Jackson, ex dem. Bear v. Irwin, 10 Wend. 447;*
*Florentine v. Barton, 2 Wallace, U. S. 210; Gilmore v. Rogers,*
*41 Penn. State R. 121.*    Though evidence and other papers on
which the court acted judicially, may not be of record or on
file, it is sufficient that the jurisdiction of the subject matter
appear from the record entry of the order of sale.    See *Grig-*

*nari's Lessee v. Acton, 2 How. U. S. 388*, and cases above cited. And the contents of a lost or destroyed record may be proven by parol. *Davis, ad. v. Petit et al. 6 Eng. (11 Ark.) 349.*

BENNETT, J.

This was an action of ejectment brought in the name of William Warren Fleming, as a person of unsound mind, by his guardian, Nancy J. Fleming, against Raphel M. Johnson, Charles Robinson, Laring Jasenburger, William Harris and James H. Harris, for lot No. 1, block No. 8, in Fort Smith, Arkansas. This action was commenced in Sebastian and removed, by change of venue, to Scott circuit court, where it was tried on the general issue. Verdict and judgment for defendants. Motion for a new trial overruled. Exceptions and appeal by the plaintiff.

When the title of the plaintiff in ejectment is controverted under the general issue, he must prove, 1st. That he had the legal estate in the premises at the time of the commencement of the suit. 2d. That he also had the right of entry; and 3d. That the defendant, or those claiming under him, were in possession of the premises at the time when the suit was commenced. See *2 Greenleaf, sec. 304; Daniel et al. v. Lefevre, 19 Ark. 202.*

At the trial, appellants produced and proved a transcript from the records of the probate court of Sebastian county, Fort Smith District, showing that, on the 8th day of January, 1859, Nancy J. Fleming, the mother of the plaintiff, was appointed his guardian—her petition representing him to be a person of unsound mind, and incapable of conducting his own affairs. Also a deed from John Rogers, the original proprietor of the city of Fort Smith, and wife, to John Pearson, bearing date 27th April, 1843, for the lot in controversy. Also a deed, of the same date, from John Pearson and wife, to the plaintiff. The plaintiff also proved that the defendants were in possession of the premises at the time of the institution of the suit, and closed.

The defendants then offered in evidence a certified transcript of the record of orders of the probate court of Sebastian, showing that, on the 15th day of January 1856, William W. Fleming, on his own petition, was appointed the guardian of his son, William Warren Fleming, a minor, under the age of 14 years.

The defendants also offered in evidence a certified transcript of the records of same court, wherein William W. Fleming, as guardian of William Warren Fleming, presents his petition for the sale of real estate, belonging to said* minor, William Warren Fleming, described as follows, on the plat and plan of the city of Fort Smith: lot No. 1, in block No. 8, measuring seventy feet front on Garrison Avenue, by one hundred feet on Ozark street. Also the defendants offered the order of said probate court on the petition, which, among other things, is in words as follows : "It is therefore ordered by the court here that the said William W. Fleming be, and he is hereby authorized and directed to sell the aforesaid lot No. 1, in block No. 8, in the city of Fort Smith, and execute to the purchaser or purchasers thereof, a deed or deeds of conveyance, to him or them, of all the right, title, or interest of the said William Warren Fleming; and the said guardian of the said William Warren Fleming, is hereby authorized and directed to sell said lot at *private sale: provided,* he shall not sell the same at less than two thousand dollars, not less than two-thirds to be paid down, and the residue in one, two and three years, bearing interest from date."

The defendants then offered in evidence an order of the same court, made April 22, 1856, which order states that "W. W. Fleming files his report, in the matter of William Warren Fleming, a minor, whereby it appears that he has, according to the order of a previous court, that is to say, at the January term, 1856, of this court, sold to R. M. Johnson, lot No. 1, in block 8, in the city of Fort Smith, at *private sale,* for the sum of two thousand dollars, and has received the sum of eight hundred and fifty dollars, and has taken notes with good security

for the payment of the residue, in one, two and three years, with interest from date, and prays that the report may be confirmed. Whereupon, it appearing that the previous order of the court has been complied with, and that said sale is in accordance with law and said order, it is considered that said sale be, and the same is hereby *confirmed* and that said *report be approved.*" Also an order, entered up at the October term of the probate court, wherein it appears that the account current of William Fleming, as guardian of William Warren Fleming, was approved and confirmed.

In addition to the usual certificate of authentication of the transcript of the record of the probate [court, embracing the above orders, the clerk of the court further certifies that he had made diligent search, in his office, for the original letters of gaurdianship, bond of guardian, petition for the sale of the real estate, and the account current in the matter of the guardianship of William Warren Fleming, and that all the original papers and records thereof, were destroyed or lost, as he believed, during the war, and they were not to be found in his office.

The bill of exceptions states that the plaintiff objected to the introduction of the transcript of the above orders, on the following grounds :

*First.* Because the order of sale, authorized the sale of the premises therein specified, at private sale, and not at a public vendue, as prescribed by law.

*Second.* Because it did not appear upon the face of the order of sale, that it was authorized by any statute, in force in this State or otherwise; or that the court making it, had jurisdiction of the subject matter.

Whereupon defendants, to show that the court acquired jurisdiction, called a witness, by whom they proved, against plaintiff's objection, the loss of the petitions of said William Warren Fleming, for the appointment of a guardian for said William Warren Fleming and for the order for the sale of said premises—and also, the loss of the account current, men-

tioned in the record, and that the petition set forth the facts, recited in the order; and thereupon, the court permitted the paper, purporting to be a transcript of the order, and account etc., etc., to be read in evidence to the jury, to which the plaintiff excepted, etc. The defendants then produced, and offered to read in evidence, a deed bearing date, the 31st of January, 1856, executed by William W. Fleming, as guardian of William Warren Fleming, to defendant, Raphel M. Johnson, for the said premises, duly acknowledged and recorded, etc., etc. To the reading of which to the jury, the plaintiff objected, on the following grounds :

*First.* Because it did not appear that the grantor therein, had authority to sell or convey the said premises.

*Second.* Because the recitals therein show that the premises were sold at private sale, and not at public vendue; and

*Third.* Because there is nothing to show that the premises were appraised before they were sold, or sold for two-thirds of their appraised value; and further, because it is not shown that the order of the sale therein recited, was authorized by law. But the objections were overruled, and the deed permitted to be read to the jury; to which the plaintiff excepted.

The deed recites the order of sale above copied, and shows, on its face, a sale in compliance with the order in all respects. After introducing the deed, the defendants closed.

The plaintiff then offered to prove, that William Warren Fleming was insane, from the time he was six or seven years of age, down to the time of the trial; to which the defendants objected, on the ground that it was inadmissible and irrelevant; and the court refused to permit the introduction of such proof, and the plaintiff excepted. Plaintiff proved that he was born on the 14th day of April, 1842. Plaintiff was permitted to introduce, against the objection of the defendants, a copy of a bond, bearing date 31st day of January, 1856, (same date of guardian's deed), executed by William W. Fleming, to defendant, Johnson; and also a covenant executed by defendant John-

son, to William W. Fleming, bearing same date of said bond, which are both set out in the bill of exceptions.

The bond from Fleming to Johnson is in the penal sum of $4,000. It recites the sale and conveyance of the premises in controversy, by William W. Fleming, as guardian of his son, William Warren, under the order of probate court, price, terms, mode, and time of payments; and that as a further security and inducement for Johnson to make the purchase and accept the conveyance of Fleming as such guardian. The substance of the covenant is, after reciting the bond, that if Fleming's son, on coming of age, should not make the conveyance stipulated for in the condition of the bond, Johnson, his heirs, etc., would not, nevertheless, consider the condition of the bond broken, so long as he or they should not be disturbed by the said William Warren, or any person claiming under him. Plaintiff also read in evidence a bill of sale for a negro woman and child, executed by defendant, Johnson, to William W. Fleming, dated 8th of January, 1856, reciting $800, as the consideration. Also proved, by a witness, that defendant Johnson, sold William W. Fleming a negro woman and child, for $850, in part payment of said premises.

Defendant, Johnson, was then sworn, on the part of the defense, and testified that William W. Fleming proposed to sell the premises to him after all the improvements thereon had been burned down; that they were not worth, then, exceeding $2,000, and that he agreed to purchase them, if the said Fleming could make a title to them; and that finally he agreed to purchase them at that price, as he wanted to erect a store house on them—he, William W. Fleming, undertaking to make a title; and it was agreed that he, Johnson, would sell him a negro woman and child at $850, in part payment of the premises. That accordingly, he, Johnson, sold him the negroes and executed the bill of sale to him, above mentioned, which was to go in part payment of the premises; that is to say, the price of the negroes was to go in part payment of the $2,000. That subsequently, he, William W. Fleming, procured an order of

the court of probate to sell the premises, and executed to him the deed above mentioned. That soon afterwards he sold two thirds of said lot for $1200. Six hundred of which was paid in stone work, upon the house erected by him on said lot. That said William W. Fleming sold the negro woman and child, in two or three months, after the execution of the bill of sale to him, for $1100. The defendants also proved that, at the time Johnson purchased the premises, they were worth from twelve to eighteen hundred dollars, which was all the testimony in the case.

The plaintiff asked the court to instruct the jury :

*First.* That the sale of the premises by William W. Fleming to defendant, Johnson, if made at private sale was void.

*Second.* That the order of sale made by the probate court was illegal and void, because it authorized the sale to be made at private sale.

*Third.* That the deed, executed under the order of sale, was void also, for the reason that the recitals in it show that the sale was made at private and not at public sale.

*Fourth.* That if the jury believe from the evidence, that the order, for the sale of the premises, read in evidence by defendant, was procured by fraud, and that defendant, Johnson, purchased the premises with a knowledge of the same, they should hold the order of sale void and inoperative.

*Fifth.* That in determining whether the order of sale was procured fraudulently, the jury will take into consideration all the attending circumstances.

*Sixth.* That if the jury believe from the evidence that the premises in controversy were sold by plaintiff's guardian for any thing, other than money, they should regard the deed from the guardian to the defendant, Johnson, void, and as passing no title to the premises.

The court refused to give the *first, second* and *third* instructions, moved by plaintiff, but gave the *fourth, fifth* and *sixth.* In refusing to give the first, second and third instructions, plaintiff excepted.

The court, at the instance of the defendant, gave in charge to the jury the following instructions:

*First.* That if the jury believe from the evidence, that William W. Fleming was guardian for the said William Warren Fleming, duly appointed by the probate court of Sebastian county, and as such, made application to the probate court of Sebastian county for the sale of the lands in controversy, and filed and presented his petition to said court, verified by his affidavit, that his ward was possessed of the real estate in controversy, and that the same could not be made available, to the said plaintiff, in its then condition, without the outlay of a large sum of money, which, in his opinion, should not be used for that purpose, and that he was unable to advance the same for his ward, and that, at that time, he could sell said real estate for a good price, and as the value of real estate was then fluctuating, he believed it to be the interest of his said ward to sell the same and invest the same in negro property, or in improved real estate; and that said petition was verified by the affidavit of a disinterested person, of known good character; and that said probate court, upon said petition, decided that said real estate, under the then existing circumstances, was not available to said minor, and that his estate would be benefitted by the sale thereof; and authorized and directed the said guardian to sell the same, and to execute to the purchasers thereof, a deed thereto, conveying all the right, title and interest of said William Warren Fleming, and make return of his proceedings to said court, and that the said guardian was authorized to sell said lands at private sale, provided he should not sell the same for less than one third, to be paid down, and the residue in one, two and three years, bearing interest from date; and that in compliance with said order, and whilst the said William Warren Fleming was still a minor, he, said guardian, sold said real estate to said Raphel M. Johnson, and executed to him a deed of conveyance thereto, in accordance with the terms of said order; and that such sale was reported to said

probate court of Sebastian county and confirmed by said court, they should find for the defendants.

*Second.* If the jury find, from the evidence, that William W. Fleming, in his individual capacity, purchased a negro woman and child from defendant, Johnson, at $850, and afterwards, in making the sale of the property in question, his guardian agreed to advance the price of payment for said property, and did actually account for that amount, in his report to and settlement with the court, such a transaction would not render the sale invalid.

Plaintiff files motion for a new trial, for the following reasons:

*First.* That the verdict was not sustained by sufficient evidence.

*Second.* That the verdict was contrary to law "and the eternal principles of right and justice."

*Third.* That the court erred in permitting the transcript of the record and proceedings of the Sebastian probate court, introduced by defendant, to be read in evidence.

*Fourth.* That the court erred in permitting the deed from William W. Fleming, as guardian of plaintiff, to defendant, Johnson, to be read in evidence to the jury.

*Fifth.* That the court erred in excluding testimony offered by the plaintiff.

*Sixth.* That the court erred in giving the instructions called for by defendants, and in refusing the instructions called for by the plaintiff.

The admission, by the court below, of the transcript of the order of the probate court, for the sale of the premises, etc.; the admission of the guardian's deed, executed to Johnson, under and in pursuance of the order of sale; the refusal of the court to give to the jury the first, second and third instructions, moved by the appellant; the giving of the first instruction asked by the appellees; and the third, fourth and sixth grounds assigned for a new trial, present but one principal question, and that is, whether the probate court had power to

· authorize the guardian to sell the property of his ·ward at *private sale.*

The order of the probate court, for the sale of the real estate in question, was made on the fifteenth day of January, 1856, and it is to this time our attention is directed, to learn what was the statute law of the State governing the disposition of the property of minors. *Secs. 180 and 181, of chap. 4, of Gould's Digest,* reads as follows: " The probate court shall have power, upon the proper affidavit being filed, as hereinafter provided for, to grant orders to executors, administrators and guardians to sell any estate, not otherwise provided for."

" The executor, administrator or guardian who may make application for the sale of real estate, shall first make affidavit that the said real estate cannot, under present circumstances, be available to the estate, and that said estate will be benefitted by said sale, showing the reason why; and shall present the affidavit of some disinterested person of known good character, verifying the same facts, set forth in his or their affidavit; whereupon, the court may grant an order for the sale of said real estate, which sale shall be conducted as *the court may direct,* and upon terms approved by the court."

These sections are a part of an act of the Legislature, approved December 24, 1846, and were in full force and effect at the time of the sale. By this enactment, the probate court had power to grant orders to guardians to sell the real estate of their wards, *"which sale shall be conducted* as the court may direct, and *upon terms approved by the court."* The power of the court to order a private sale, under the act, or a public sale, at discretion, does not admit of serious doubt. Although the probate courts, in making orders to guardians to sell lands under the act, might, in the exercise of the discretion given them by the act, as to the mode of sale, direct the guardian to sell, after appraisement, and at public sale, to the highest bidder; or the court might fix the value of the property itself, and direct the sale to be public or private, at discretion,. the

whole matter, under the act, being at the discretion of the court.

The constitution of 1836, under which the sale in question occurred, conferred upon the probate court "such jurisdiction in matters relating to the estates of deceased persons, executors, administrators and guardians, as may be prescribed by law, until otherwise directed by the General Assembly." *Art. 6, sec. 10*. The act of December 28, 1846, gave power to the court to grant orders to sell real estate of their wards upon the prescribed petition and affidavits, but left the manner and terms of such sales to the discretion of the court. In Jackson, *ex-dem, Bear v. Irwin, 10 Wend., 447*, SAVAGE, Chief Justice, said: "It is objected that the lot should have been sold at *public sale*. The statute of 1801, which we have been considering, gives no direction as to the manner in which sales should be made; they might be at public or private sale, in the discretion of the executors or administrators, who were to make the sales. Were it not for the act of 1813, I apprehend that objection would not have the appearance of plausibility."

The Judge then proceeds to show that in the revision of 1813, there was a provision relating to the surrogate's powers, that no lands or tenements should be sold by virtue of such order of sale, unless such sale be at public vendue, etc. He then decides that the private sale in question was made under the act of 1801, and not under the act of 1813, and hence was valid.

In *Florentine v. Barton, 2 Wallace, 217*, Justice GREER said: "There may have been many reasons why it would be for the benefit of the estate and creditors, that the land should be sold at private and not public sale."

The above decisions, we think, fully sustain our position, that, under the statute in force at the time this sale was made, the court could order such an one as its discretion would dictate, whether public or private. When, by constitutional or legislative authority, a court is left with discretionary power to act in certain cases, the lawful exercise of that discretion is

a judicial act, which, even in a direct proceeding, cannot be controlled by a superior or appellate court, on appeal, unless it has been grossly abused. It is a general rule that the confirmation of a sale, made in pursuance of an order of court, cures all defects or irregularities, and its validity is put beyond question by that fact, unless it is attacked directly. See *Simond's Estate, 19 Penn., 439; Jacob's Appeal, 23 Penn., 477; Bland v. Manchester, 24 Miss., 62; Ewing v. Vaurman, 19 Wisconsin.* Then, again, it has been repeatedly declared by this court that probate courts are superior ones. If such be the case, all reasonable presumptions of law are in favor of the regularity of their proceedings, the record of which, beyond which this court cannot look, in this case, shows it had jurisdiction, and furnishes satisfactory grounds upon which to presume that it was lawfully exercised.

We are fully of the opinion that when a title, derived under an administrator or guardian's sale comes in question in a collateral suit, and not in a direct proceeding to review the order of sale, etc., this court can only look to see that the probate court had jurisdiction of the subject matter of the order, etc., and will not inquire into errors or irregularities, unless patent upon its face. For, when the jurisdiction of the subject appears, the proceedings are presumed to have been regular, and we think it is sufficient that the jurisdiction of the subject matter appears from the record entry of the order of sale, though the evidence, and other papers on which the court acted judicially, may not be of record or on file. As to attacking a title, acquired under an order of a probate court, in a collateral proceeding, the court in the case of *Jackson ex. dem. Jenkins v. Robinson, 4 Wend. 436*, say: "However extraordinary or erroneous be the determination and proceeding of a court of limited authority, if it acts within its proper jurisdiction as to the subject matter, place and person, its judgments or decrees cannot be impeached or invalidated in a collateral action."

This was an action of ejectment, in which the plaintiff was

28

solely relying upon an administrator's deed, made in pursuance of an order of sale in the surrogate's court, which the defendant sought to overturn, by offering to prove that, by the inventory, affidavit and papers, presented to the surrogate, by the administrator, on his application for the order of sale, it did not appear that, at the time of such application, any debts remained due from the estate of the intestate, etc., which evidence was objected to and overruled by the judge; which rulings were sustained as seen above. Also in the case of *Jackson ex. dem. John McFail et al. v. Crawford*, which was also an action in ejectment, in which plaintiff claims, as heir at law of John McFail, and the defendant is in possession, under title derived from an administrator's sale, by virtue of a surrogate's order. The right of the parties depended entirely upon the validity of the sale. The court say: "upon the surrogate obtaining jurisdiction over the subject matter, that, in deciding whether there is personal property sufficient to pay the debts, he acts judicially, and if he should decide erroneously in respect to it, or should make a mistake as to any other matter submitted to his examination and decision, it would not affect his jurisdiction; that the proceeding would not on that account be void, but voidable only; that they could not be impeached for any irregularity before the surrogate, in a collateral action, but must be corrected on appeal." "The court will intend that the court below had proper evidence to justify his decree, which being unappealed from, is conclusive. *6 Cowan, 494.* His decision is *res judicata*, and can not be collaterally questioned." *6 Johns. C. R. 381.*

"The record of the proceedings, in a court of limited jurisdiction, regular and correct on the face of it, cannot be impeached in a collateral action." *8 John R. 50; 8 Cowen, 178.* "The judgment of a court of exclusive jurisdiction, directly on the point, is conclusive." *1 Phillips, Ev. 242.* "Nothing which might have been insisted on, by way of appeal, can be urged in answer to the evidence furnished by the decree." *1 Starkie's Ev., 253.*

Judge SCOTT, in the very able and elaborate opinion given in the case of *Borden et al. v. State, etc.*, after having argued the question as to the status of probate courts, and in what light their judgments should be held, says: "We feel warranted, therefore, not only on the score of authority, but for cogent reasons of public policy, to fix these courts upon the footing of superior courts." Also, "entertaining these views and so holding the law to be as to the two foregoing propositions, we have but to say, as to the supposed error in the case before us, that the general and well settled rule of law in such case, is, that when the proceedings of such a court are collaterally drawn in question, and it appears on the face of them, that the court had jurisdiction of the subject matter, such proceedings are voidable only, although there may be obvious errors, and, therefore, we can judicially see only what the court has done, and not whether it has proceeded in *verso ordine*, erroneously, according to the proof before them or what they have omitted or ought to have done." See also, *Marr. Exparte, 7 Eng. 84.; Rogers v. Wilson, 6 Eng., 507; Bennett v. Owen, 6 Eng., 177; Sturdy v. Jackoway, 19, Ark., 516.*

This principle runs through all these cases, and hundreds of others that might be cited. Then, shall it be said that after the probate court, in the exercise of that discretion, which the statute has given it, has entered up its order of sale, if properly within its jurisdiction, and it has been completed and confirmed by said court, as in this case, that such order of sale and confirmation may be declared void, and held for naught in a collateral proceeding? We think not. Under such circumstances, to hold the doings of the court were a nullity, would be, to say the least of it, going a great way. Here was a subject matter legitimately and peculiarly within the jurisdiction of the probate court. An application by a guardian for the sale of lands belonging to his ward, brought regularly before the court—that application considered and decided upon, and that too, with a sufficient margin in the record for the presumption, that facts were established by facts, to fully authorize

the order given, and without any objection to it in point of correctness, much less of power.

But it is urged by appellants, that the defendants below could not by witnesses show jurisdiction in a court, when the record offered did not establish it—inasmuch as jurisdiction of another court must always be shown by the records from that court.   Jurisdiction has been thus defined by the Supreme Court of the United States, in *6 Peters, 709.*   "The power to hear and determine a cause is jurisdiction; it is *coram judice* whenever a case is presented, which brings this power into action."   In *12 Peters, 718*, the court say, "Any movement by a court, is necessarily the exercise of jurisdiction; so to exercise any judicial power over the subject matter and the parties, the only question is, whether on the case before the court their action is judicial or extra-judicial, with or without the authority of law, to render a judgment or decree upon the right of litigant parties.   If the law confers the power to render a judgment or decree, then the court had jurisdiction."   There can be no doubt of the jurisdiction of probate courts in all matters relating to estates of deceased persons or minors, under the Constitution of 1836, or the law of 1846.   In making any order in relation to the same, the courts are presumed to have adjudged any question necessary to justify such order or decree. The order of sale in this instance clearly sets out that the guardian presented his petition, verified by affidavit, setting forth that his ward was possessed of certain real estate, and described the same; also alleges facts as reasons why it would be to the interest of his ward, why it should be sold.   All these were statutory requirements, and were fully complied with. The order was made, and the presumption is that the court had all the original papers before them for adjudication.   The court is not bound to enter on record the evidence on which any fact is decided.   The proceedings on which an action of the court is founded, are usually kept on separate papers, which are often mislaid or lost.   A purchaser, under such a sale, is not bound to look further back, than the order of the court,

or to inquire as to its mistakes. A different doctrine would (especially after a lapse of a number of years) render titles under judicial sales worthless, and a "mere trap to the unwary." These propositions are discussed at great length and fully decided in the case of *Giynari's Lessee v. Astor, 2 How. P. 338.* Any further argument would be superfluous. Even if it were necessary to have produced the original petition, affidavits, etc., upon which the order was founded, in order to show jurisdiction, this has been met by the introduction of parol evidence to establish the loss of the account current, mentioned in the record entry, and that the petition set forth the facts recited in the order. The clerk of the court testified that he had made diligent search in his office for the original letters of guardianship, bond, petition, etc. The degree of diligence, says the court in the case of *Simpson v. Watson, 45 Maine, 288,* "That is required to establish the destruction or loss of a written instrument, or to prove the non-existence of a record, will depend much upon circumstances. When the transaction to be established is of ancient date, and only one appropriate place of deposit exists for the preservation of such instrument or record, and there is no suggestion that they may be found elsewhere, and that place of deposit is carefully examined without success, an inference of unrecoverable loss or destruction would thereupon arise, while if the transaction were of recent date, such an inference might not be authorized, though the surrounding facts were of a similar character." Although in the case before us, the search for the missing papers and records does not appear to have been of a very extended character, yet when we reflect that it referred to a transaction, happening before the late civil commotion, and that in many instances, during that period, the records and papers belonging to the courts were removed from their former place and carried many miles away, the evidence of loss or non-existence of missing papers and records was such as would authorize any court to admit parol evidence to establish their contents, or resort to evidence of an inferior character.

Another point raised by the appellants is, that the court erred in excluding the proof that the ward of the guardian was insane from the time he was six years of age, down to the time of the trial. It appears that the appellant, William Warren Fleming was born April 14, 1842. His father, William W. Fleming, was duly appointed guardian by the probate court on the 15th of January, 1856, when he, the son, was under the age of fourteen years. The order for the sale of the lot was made at the same term of the court, and the report of the sale was made, approved, and the sale confirmed at the April term following

The matter in issue on the trial was the validity of the sale; and it was immaterial and irrelevant whether the appellant was *sane* or *insane*, when his father was appointed his guardian, or when the order of sale was granted, or when the sale was made, confirmed, etc., he being all the while an infant. The probate court appoints a guardian for an infant, solely because of the infancy, and no inquiry is made as to sanity. The law regards the infant, whether sane or insane, as incapable of acting for itself, and provides for it to be placed under a guardianship, which continues until it is of age, and then this guardianship ceases. *Gould's Digest, chap. 81 p. 570.* The law also provides for the appointment of guardians for adult persons, when found, upon proper inquest, to be insane, etc. *Gould's Digest, chap. 89, p. 605.* The two kinds of guardianship are as distinct as the two statutes which provide for them. The latter begins where the former ends, after the infant is of age.

The only remaining question is that of fraud, as raised by the fourth, fifth and sixth instructions, given by the court to the jury, on the part of the appellant and the second instruction given by appellees. This, we think, was fairly left to the jury to determine. If that question could be inquired into here, in a collateral proceeding, the evidence utterly failed to show any; on the contrary the evidence shows that the order was regularly and with the utmost fairness obtained. There

is nothing throughout the whole record that tends in the least to show fraud or unfairness in the sale.

There is no error in the record, and the judgment must be affirmed.