BRANCH *v.* VETERANS' ADMINISTRATION.

4-3549

Opinion delivered October 1, 1934.

W. M. Hall, James G. Coston and J. T. Coston, for appellants.

Cleveland Cabler, for appellee.

BUTLER, J.   Prior to August 1, 1927, Thad Branch, the appellant, was appointed guardian of Bert Branch, an insane person.   The guardian took possession of the estate of his insane ward which was derived from the Federal Government through the Veterans' Administration on account of services rendered by Bert Branch as a member of the military forces of the United States during the World War.   The guardian had in his hands surplus funds not needed for the support and maintenance of his ward and, on August 1, 1927, filed a petition with the probate court for authority to loan the sum of $3,000, alleging that the security proposed was one hundred

acres of land favorably located in the Osceola District of Mississippi County, in a high state of cultivation and worth $100 per acre, but which was then incumbered by a mortgage in the sum of $3,000 due the Southwest Mortgage Company. On the same day the court granted the prayer of the petition and made and entered an order finding that the security was adequate and authorizing the guardian to lend the money taking as security a mortgage on the land subject to that of the mortgage company.

In November, 1931, the guardian filed his settlement in which he credited himself with the aforesaid loan of $3,000 and two other loans made by him as guardian, one to O. P. Whitson in the sum of $250 and one to R. C. Allensworth in the sum of $125. To this settlement exceptions were filed by the Veterans' Bureau. The probate court sustained the exceptions, holding that the loan of $3,000 made to one Isadore Branch was not made on the security provided by law, that the two small loans mentioned were without any authority of the court having been obtained, and that the guardian had further failed to account for a sum of $272.58. The court adjudged him to be liable for all of these sums with interest thereon at six per cent. On appeal to the circuit court the action of the probate court in sustaining the exceptions was sustained, from which judgment this appeal has been prosecuted.

The appellants contend that, since the statute regulating the guardianship of insane persons places the management of their estates under the control of the probate court, that court had jurisdiction to make the order of August 1, 1927, authorizing the guardian to make the $3,000 loan to Isadore Branch, from which no appeal was ever prosecuted, and that, as the judgment of the probate court cannot be attacked collaterally, it protects the guardian in the loan made.

The finding of the probate court that the loans to Whitson and Allensworth, aggregating $375, were unauthorized does not appear to be contested. It is insisted, however, that the finding that the sum of $272.58 has not been accounted for is not supported by any evidence and that the judgment finding the guardian liable

for this sum should be reversed, and this contention is conceded by appellee.

It is the contention of the appellee that § 5061 of Crawford & Moses' Digest limits the power of the probate court to make an order authorizing the loan of an insane ward's money, and that, since the loan was not made on the security named in that section, the order of the probate court was *coram non judice* and so may be attacked in a collateral proceeding. Section 5061, *supra,* is as follows: "Guardians and curators shall loan the money of their wards at the highest rate of interest prevailing in the community that can be obtained on unincumbered real estate security, and then not more than to the extent of one-half of the value thereof. The interest in all cases shall be paid annually, and if not then paid shall become part of the principal and bear interest at the same rate." The order of the probate court of August 1, 1927, shows on its face that the security was not on unincumbered real estate, but it is the contention of the appellants that the statute quoted has no application. In this we find the appellants to be correct. The section is a part of chapter 78 of Crawford & Moses' Digest relating to guardians of minors and prescribing how a guardian shall administer their estates. The statute relating to insane persons providing how guardians shall handle the estates of such is wholly independent and distinct from that relating to the guardianship of minors, and has been since the earliest legislation in this State on those subjects. In 1838 the Legislature dealt with both subjects. In chapter 72 of the Revised Statutes the Legislature dealt with the subject of minors and their guardians, which statute was approved February 14 of that year. On February 20 following, chapter 78 of the Revised Statutes, dealing with insane persons and the guardianship of their persons and estates, was adopted and approved. That act remains unchanged except in some unimportant details and now appears as chapter 92 of Crawford & Moses' Digest.

In 1873 the Legislature considered anew the subject of minors, the appointment of their guardians and the administration of their estates, and enacted a compre-

hensive statute relating to this subject, being act No. 78 of that year, without, however, repealing or altering parts of chapter 72 of the Revised Statutes which now with that act is chapter 78 of Crawford & Moses' Digest. Section 40 of that act provided for the lending by the guardian of the money of his ward. That section was digested in Gantt's Digest as § 3076, and was amended by act No. 69 of the Acts of 1879 which became § 3514 of Mansfield's Digest. This section was further amended by act No. 73 of the Acts of 1893 and is now § 5061, Crawford & Moses' Digest. As a reason for reading § 5061 into the statute dealing with the estates of insane persons, counsel for the appellee suggests: ''Some parts of the original act No. 78, approved April 22, 1873, concerned only estates, of minors, whereas other sections of that act concerned the administration of estates of both minors and insane persons, and as the major part of said act concerned minors, the Digester brought forward act No. 78 of 1873 to form a part of chapter 78 of Crawford & Moses' Digest, which probably was the proper place for act No. 78; however, the fact that the Digester placed it in that manner does not in any way change the provisions of that law or the intent which the lawmaking body had, as it is not an uncommon thing for our lawmaking body to incorporate as a part of a measure, a provision which, although it is related to the subject-matter, does not in fact strictly come under the general subject of the measure as enacted.'' Counsel does not point out the sections of the act which, in his opinion, relate to insane persons and the estates of such, and we cannot agree with him that any such exist. A careful reading of that statute leads to the inescapable conclusion that it relates to minors and the guardianship of their persons and estates, and to these alone.

This court in the case of *Fleming* v. *Johnson*, 26 Ark. 421-438, had under consideration the original acts contained in the Revised Statutes—one relating to minors and their guardians and the other relating to insane persons, drunkards, spendthrifts, and their guardians, and held the two acts to be independent of each other. In that case a father had been appointed guardian of

his son, a minor child, and, acting under the order of the court as such, sold to the appellee, Johnson, a parcel of land which was the property of said minor. Shortly afterward, the mother was appointed guardian of the minor on account of his insanity and brought an action to set aside the conveyance of the first-named guardian. In passing on the points thus raised, this court held that the probate court had jurisdiction of the subject-matter when it made the order for the sale of the real estate, and that it was not subject to collateral attack. The court said:

"Another point raised by the appellants is, that the court erred in excluding the proof that the ward of the guardian was insane from the time he was six years of age down to the time of the trial. It appears that the appellant, William Warren Fleming, was born April 14, 1842. His father, William W. Fleming, was duly appointed guardian by the probate court on the 15 of January, 1856, when he, the son, was under the age of fourteen years. The order for the sale of the lot was made at the same term of the court, and the report of the sale was made, approved, and the sale confirmed at the April term following.

"The matter in issue on the trial was the validity of the sale; and it was immaterial and irrelevant whether the appellant was sane or insane, when his father was appointed his guardian, or when the order of sale was granted, or when the sale was made, confirmed, etc., he being all the while an infant. The probate court appoints a guardian for an infant, solely because of the infancy, and no inquiry is made as to sanity. The law regards the infant, whether sane or insane, as incapable of acting for itself, and provides for it to be placed under a guardianship, which continues until it is of age, and then this guardianship ceases. Gould's Digest, chap. 81, p. 570. The law also provides for the appointment of guardians for adult persons, when found, upon proper inquest, to be insane, etc., Gould's Digest, chap. 89, p. 605. The two kinds of guardianship are as distinct as the two statutes which provide for them. The latter begins where the former ends, after the infant is of age."

In *Baker* v. *Loveland*, 174 Ark. 262, 295 S. W. 20, a daughter was appointed guardian of her aged and mentally incompetent mother. During the last two years of the mother's life she was an invalid and required much attention. The daughter guardian nursed her mother under a tentative agreement with the other members of the family that she would be compensated for her services. After the death of the insane ward, the guardian filed her claim in the probate court for the sum of $1,037 as compensation for her services. This was found to be reasonable and the claim allowed. After disposing of other questions in favor of the claimant, the court said: "Neither do we find any merit in appellant's contention that the claim for services rendered could not be allowed against the estate of the deceased, under the statute (§ 5058, Crawford & Moses' Digest) providing that the guardian shall not be allowed in any case, for the maintenance and education of the ward, more than the clear income of the estate, unless upon an order first made permitting such expenditure. This statute has no application to the guardianship or estates of insane persons." Thus it will be seen that we have held the two statutes distinct, both before and after the passage of the Acts of 1873 and the amendments in 1879 and 1893, and held the provisions governing the guardianship of minors has no application to the guardianship and administration of the estates of insane persons.

It is well settled that a guardian of an insane person at common law had no power except to hold intact and preserve the estate of his ward. Since the power to invest the insane ward's money does not exist at common law and is not given by § 5061, *supra*, if it exists at all, it must be found in the statute dealing with insane persons and the administration of their estates. This is the point which presents the greatest difficulty. We find no express grant to the probate court of the power to order the lending by a guardian of money belonging to his insane ward. The sections which deal with the administration of an insane person's estate are §§ 5852 and 5853 of Crawford & Moses' Digest, which are §§ 43 and 19 of chapter 78 of the Re-

vised Statutes. Section 5853 impowers the probate court, where an insane person is committed by it to guardianship, to make the necessary orders with respect to the person of the ward, and "for the management of his estate and the support and maintenance of his family and the education of his children out of the proceeds of his estate." Section 5852 places in the court the control of the guardian in the management of the person and estate of the ward and the settlement of his accounts, with power to enforce its orders in the same manner as a court of chancery.

We are of the opinion that the authority given the court to make orders for the management of the estate of an insane person and to control the guardian of such in the management of the estate by necessary implication confers the authority to make all necessary orders affecting the surplus money of the ward which, in the judgment of the court, would be to the best interest of the ward and of his estate. Therefore, the court is authorized to order a guardian to lend the surplus money of his ward.

The conclusion reached is supported by decisions construing the term "management of estates, property, etc.," as used in conveyances, wills and statutes. "Management" is defined as government, control, superintendence, physical or manual handling or guidance—the act of managing by direction or regulation, or administration, as the management of a family, or of a household, or of servants, or of great enterprises, or of great affairs. In re *Sanders,* 53 Kan. 191, 36 Pac. 348, 23 L. R. A. 603.

A statute giving the management of a certain fund to a certain commission implies the power to control the fund. "It allows the exercise of discretion. It could not be managed without the power to do so and by requiring the one the other was conferred." *Commissioners of Sinking Fund* v. *Walker,* 7 Miss. 143, 38 Am. Dec. 433.

A will constituting certain persons trustees of the estate * * * and directing that said trustees have the entire management of the estate * * * means the control

of the property to the end that income and profit should be derived from it such as leasing, investing, securing, collecting, etc. *Watson* v. *Cleveland*, 21 Conn. 538-41.

"Management," within the statute giving finance commissioner management of city finances, means control, superintendence, or physical handling or guidance. *Topeka* v. *Independent Indemnity Co.*, 130 Kan. 650, 287 Pac. 708.

A power of attorney, after mentioning certain specific powers, authorized the agent to act generally in the sale and management of the principal's personal property. This impowered the agent to execute in his principal's name a note for the price of corporate stock purchased by him for the principal, and did not limit the agent's power in executing notes to execute notes for indebtedness existing at the time the powers were executed, since to take entire management of an estate necessarily implies the power to invest the income and collections, and to manage money means to employ or invest it. *Keyes* v. *Metro. Trust Co.*, 220 N. Y. 237, 115 N. E. 455.

In *Sencerbox* v. *First National Bank of Idaho*, 14 Idaho 95, 93 Pac. 369, in construing a statute giving to the husband the management and control of the separate property of the wife during the continuance of the marriage, the court held that the words "management" and "control" have a well-defined meaning, that the power to manage implies the power to control, and that to manage money is to employ or invest it.

Sections 5853 and 5852, *supra*, therefore, impliedly authorize the court to order the investment by the guardian of surplus funds of a ward. The terms upon which a loan may be authorized and the security required is left to the discretion of the court, the presumption being that no improvident loans will be made or such as would not be well secured. In dealing with the estates of insane persons, the court ought never to authorize a loan except where there can be no reasonable doubt that the security is such that out of it payment could be secured without delay, and in the case at bar the court abused its discretion in authorizing a loan secured by property al-

ready incumbered with a mortgage which could, and would, have been corrected on direct appeal. However, probate courts are superior courts within the limits of their jurisdiction, and where, as in this case, jurisdiction is had of the subject-matter, a judgment of such court is impervious to collateral attack. This doctrine is so well settled by numerous decisions of this court that a citation of authorities is deemed to be unnecessary.

In view of the conclusions reached, it follows that the trial court erred in sustaining the exceptions as to the $3,000 loan. As heretofore noted, it appears that the action of the court in sustaining the exceptions as to the loans of $250 and $125 is not questioned. Indeed, this could not be, for the duty rests upon the guardian to administer the estate of his ward under the orders of the court and to affirmatively show that any loan made by him was so authorized.

The judgment of the lower court is therefore affirmed as to the $250 and $125 items, and reversed as to the $272.58 item, and, as to the "loan to Isadore Branch of $3,000," the cause is remanded with directions to overrule the exceptions as to those items, and certify its action to the probate court.

McHaney, J., dissents.