UNITED STATES FIDELITY & GUARANTY COMPANY *v.* CHAMBERS, JUDGE.

4-6743                                    160 S. W. 2d 888

Opinion delivered April 13, 1942.

82

*J. M. Smallwood,* for petitioner.

*Paul X. Williams,* for respondent.

GREENHAW, J.   Millie Shelton, wife and guardian of V. C. Shelton, an incompetent World War veteran, filed a petition in the southern district of the probate court of Logan county, asking that the court authorize her, as guardian, to purchase a home for the ward and his family, and pay for same out of the proceeds of the ward's estate.

The petition alleged that the guardian and their two minor children make their home with the incompetent, and depend upon him for their support and maintenance.   The family has been living in rented houses and moving from place to place, which is detrimental to the ward's physical and mental health, and has caused the ward who is in a highly nervous condition to become dissatisfied and irritable.   The children are now approaching school age, and they desire to have a permanent abode while these children are being educated.

It was further alleged that the guardian has an opportunity to purchase the property which they now occupy in Booneville, and in which the ward is perfectly contented, for $2,000, which is a reasonable price.   Rental on this property during the children's education there would be, at the present rate, approximately $3,000. The ward's income from pension and insurance is $156 per month, and assets of his estate are more than $10,000.

The ward and his family desire to make this property their home, which would be for the best interests of the ward and his estate, and an economical and businesslike way in which to provide support and maintenance for the ward and his dependents.

The Veterans' Administration filed an entry of appearance, pursuant to act 283 of 1941, which provides that the Administrator of Veterans' Affairs shall be a party in interest in any guardianship proceeding involving an incompetent veteran or his estate. It stated there was no objection to an order authorizing a purchase of a home for the incompetent ward, provided the court found that the premises to be purchased are fairly valued at the proposed purchase price.

The United States Fidelity & Guaranty Co., surety on the guardian's bond, filed a response to the petition, in which it admitted the facts set forth in the petition, but alleged that the probate court was without jurisdiction to grant the relief prayed for.

The probate court entered an order holding that it had jurisdiction to try the cause and grant the relief asked in the guardian's petition, and dismissed the response of the surety company. Thereupon the company filed a petition in this court for a writ of prohibition against Hon. J. E. Chambers, judge of the probate court, to prohibit him from trying this case, stating that respondent will grant the relief asked unless prevented by an order of this court, and contending that the probate court is without jurisdiction to authorize the expenditure of funds in the hands of the guardian to purchase a home for the incompetent ward.

The question to be decided, therefore, is whether the Logan probate court has jurisdiction to authorize the guardian of the incompetent ward to purchase a home for the benefit of the ward and his dependents. It is our opinion that the probate court has jurisdiction to grant the relief prayed for, and that prohibition should be denied herein.

Section 7543 of Pope's Digest provides: "Probate courts, within their respective counties, shall have power

and jurisdiction to appoint, and possess a superintending control over, guardians to take the care, custody and management of idiots, lunatics, habitual drunkards and persons of unsound mind who are incapable of conducting their own affairs and their estates, real and personal, and to provide for the safekeeping of such persons, the maintenance of themselves and their families, and the education of their children, in the manner hereinafter directed.''

Section 7570 of Pope's Digest is: ''Every probate court by which any insane person is committed to guardianship may make such orders for the restraint, support and safekeeping of such person; for the management of his estate and the support and maintenance of his family and education of his children out of the proceeds of his estate; to set apart and reserve for the use of such family any property, real or personal, not necessary to be sold for the payment of debts; and to let, sell or mortgage any part of such estate, real or personal, when necessary for the payment of debts, the maintenance of such insane person or his family, or the education of his children.''

In the case of *Branch v. Veterans' Administration,* 189 Ark. 662, 74 S. W. 2d 800, this court differentiated between management of the estates of minors and insane persons, and, among other things, said:

''The sections which deal with the administration of an insane person's estate are §§ 5852 and 5853 of Crawford & Moses' Digest, which are §§ 43 and 19 of chapter 78 of the Revised Statutes. Section 5853 empowers the probate court, where an insane person is committed by it to guardianship, to make the necessary orders with respect to the person of the ward, and 'for the management of his estate and the support and maintenance of children out of the proceeds of his estate.' Section 5852 places in the court the control of the guardian in the management of the person and estate of the ward and the settlement of his accounts with power to enforce its orders in the same manner as a court of chancery.

"We are of the opinion that the authority given the court to make orders for the management of the estate of an insane person and to control the guardian of such in the management of the estate by necessary implication confers the authority to make all necessary orders affecting the surplus money of the ward which, in the judgment of the court, would be to the best interest of the ward and of his estate. Therefore, the court is authorized to order a guardian to lend the surplus money of his ward."

The ownership of the home sought to be purchased in this case would enable the ward and his dependents to be permanently located in the property they have occupied for some time, and which they desire to continue to occupy, thereby removing the uncertainty of occupancy which is always incident to rented property. The property, if purchased, would be an asset of the ward's estate, and would also save the rent which otherwise would have to be expended. We must and do recognize the fact that a dwelling place, whether owned, rented or donated, is a necessity for the ward and his dependents. The statutes above quoted specifically vest jurisdiction in the probate courts to make orders for the management of the estates of mentally incompetent persons, for the support and maintenance of their families and the education of their children from the proceeds of the ward's estate. We think these provisions are sufficiently broad to empower the probate court to authorize the guardian of the mentally incompetent person to purchase a home for the ward and his dependent family, suitable to their means and station in life.

Prohibition is, therefore, denied.