RURAL SPECIAL SCHOOL DISTRICT No. 21 *v.* COMMON
SCHOOL DISTRICT No. 87.

Opinion delivered February 23, 1931.

*Reed & Beard,* for appellant.

*Trimble, Trimble & McCrary* and *O. E. Williams,* for
appellee.

BUTLER, J. On the 28th day of March, 1930, a petition for the consolidation of Rural Special School District No. 21 with Common School District No. 87 of Lonoke County, after the required notice had been given and proof thereof made, was filed with the county board of education of said county. Thereafter, on the date of the hearing thereof, April 12, 1930, there were three other petitions filed affecting district No. 87, one praying that, in the event it was found that district No. 87 should be abolished, or that its boundary lines be changed, certain named sections thereof be detached and annexed to Special School District No. 10, alleging that it was for the best interests of the patrons and school children residing on said land and of all parties affected that the same be annexed to Special School District No. 10, and concluding with the prayer that the boundary lines of district No. 87 be changed and the territory named annexed to said district No. 10. Another asking that certain other sections of district No. 87 be detached and annexed to Common School District No. 92; the third, that the other parts of district No. 87 be annexed to Common School District No. 90. No notice of these three petitions for the change of the boundary lines of district No. 87 and the annexation of its parts to Special School District No. 10 and Common School Districts Nos. 90 and 92 was given. On April 12, 1930, the petition for the consolidation of Common School District No. 87 and Special School District No. 21 was presented to the board for its action, as were also the other petitions. The board ignored the last three petitions filed and made an order consolidating districts Nos. 21 and 87 as prayed. An appeal was taken to the circuit court, and at the hearing all of said petitions were considered. The court heard the case on said petitions and testimony introduced on behalf of the appellants and the appellees and the following stipulation of counsel: "It is admitted by all parties hereto that a majority of the electors of Rural Special School District No. 21 and Common School District No. 87 have signed

the petition herein for a consolidation of said districts, but that only two or three of the signers of the petition of those who live in Common School District No. 87 are qualified electors, said latter petition containing 24 names; and that the respective petitions from Common School District No. 87, Common School District No. 90, Common School District No. 92, and Rural Special School District No. 10, contain..............names, and are a majority of the qualified electors from said districts as to the territory affected under these petitions.''

The court thereupon rendered judgment, which, omitting formal parts, is as follows:

''Since the school is going to maintain a bus to transport the children to and from school, who are located in sections 11, 12 and 13, the court finds that district No. 10 is a party to this lawsuit and has a graded school, and the testimony shows that they are not overcrowded, and it is for the best interest of Special School District No. 10 to have sections 29 and 30 and the south half of sections 19, 20 and 21. The court further finds that district No. 90 is a party to this lawsuit, and the undisputed evidence shows that the children who live in sections 11 and 12 are unable to be transported to Central High, nor to district No. 10, and it would be to the best interest and benefit to the people who live in these sections to join over in district No. 90. The court further finds under the undisputed testimony that the children who live in sections 13 and 14 could not be transported to Central High on account of the high water, and they are not attending district No. 92, and it would be to the best interests that they be annexed to No. 92. The court further finds that the majority of the parties who are qualified electors of School District No. 87 are opposed to going into district No. 21, and it would be to the best interest of district No. 87 to remain like it is. The court further finds that district No. 21 is overcrowded, and, unless you can agree to the division, the court finds it is to the best interest of the districts and the territory as a whole, and the per-

sons thereof, that district No. 87 be not annexed to district No. 21, and that No. 21 and No. 87 remain like they are, and that the action of the Lonoke County Board of Education in, by its order, changing the boundary line between Rural Special School District No. 21 of Lonoke County, Arkansas, and Common School District No. 87 of Lonoke County, Arkansas, so as to embrace and include in its entirety all the territory of Common School District No. 87 within the boundaries of Rural Special School District No. 21 is arbitrary and unreasonable.''

To reverse the above judgment this appeal has been prosecuted.

1. It may first be said that the effect of the several petitions for the change of the boundaries of district No. 87 and attaching parts of its territory to school districts Nos. 10, 90 and 92, respectively, if granted, was to dissolve and dismember district No. 87.

''The county board of education shall have power to dissolve any school district now established or which may hereafter be established in its county, and attach the territory thereof in whole or in part to an adjoining district or districts, whenever a majority of the electors residing in such district shall petition the court so to do.'' Section 8869, Crawford & Moses' Digest.

''When such dissolution is proposed, notice shall be given by those proposing the same by posters in four public places in the district. Such notices shall be posted thirty days before the meeting of the board at which such petition is proposed to be presented.'' Section 8870 *Ib.*

The compliance with § 8870, *supra,* as to notice, is jurisdictional, and, as no notice was given, the board properly ignored the three petitions last filed. *Rural Special School Dist.* v. *Baker,* 144 Ark. 397, 222 S. W. 732; *Mitchell* v. *Directors Special School Dist.,* 153 Ark. 50, 239 S. W. 371; *Acree* v. *Patterson,* 153 Ark. 188, 240 S. W. 33.

Since a majority of the qualified electors of the territory embraced within the boundaries of district No. 87 and district No. 21 signed the petition and due notice of its presentation to the county board of education was given, the board acquired jurisdiction to hear the same. It appears that no testimony was heard or offered before the county board, but it had the power, nevertheless, to make the order, which is valid unless it is shown that the order was an abuse of its discretion.

It would hardly be possible to create a school district or to change its boundaries so as to give equal convenience to each child residing therein. Some must necessarily be further removed from the school than others, not all the ways from the home to the school would be alike, and in matters of schools, as in all the other affairs of men, some must suffer for the common good. The primary object for the creation of school districts is to give such educational advantages as will tend to a diffusion of knowledge and the growth of intelligence among all classes, and all considerations should be secondary to this; and it is this which the lawmakers contemplated when, in providing for the change, formation, or consolidation of school districts, it was stipulated that this should be done in a manner that "would be for the best interest of all parties affected." In these matters the rights of everyone must be respected, and no one should be unncessarily inconvenienced or oppressed, and whenever any district is created or consolidated with another, or its boundaries changed, the county board of education may not "greatly inconvenience, oppress or outrage any parties residing in any part of the territory. The true interpretation of the statute is that the wishes and convenience of a substantial majority of the whole territory should be respected if, in doing so, it would not greatly harm the other parties affected." *Bledsoe* v. *McCowan,* 181 Ark. 584, 26 S. W. (2d) 900, and cases there cited.

Applying the principles announced to the evidence, we are unable to see how it supports the findings of the

learned trial judge that the action of the county board of education was arbitrary and unreasonable. It is true that a number of witnesses testified that some of the children residing in district No. 87 would be greatly inconvenienced by the consolidation of that district with district No. 21, and that school districts Nos. 10, 90 and 92 would be greatly benefited by the annexation of the territory of district No. 87 to these districts. The school for white children in district No. 87 as maintained consisted of a one-room school house conducted by one teacher, having an attendance of from eight to fifteen children. The school in district No. 21, called Central High, is composed of a number of commodious modern school buildings with all of the necessary equipment, having thirteen teachers, with grades running from the primary up to and including a high school course, it being known as a Class A school, and its graduates admitted to the State University without examination. In comparing the advantages of these two schools to a child, two of the witnesses for the appellees testified that it had much better advantages in the former school than in the latter. However, this opinion, which may have some justification in the reasons given by the witnesses, seems to run counter to the trend of modern thought, and certainly would not warrant the assumption that the board was arbitrary and unreasonable in holding to a contrary view.

On behalf of the appellant, it was shown that there was a highway running across the territory of district No. 87 to the school in district No. 21, on which highway buses for the transportation of children might be, and were, operated, and that the time required to transport the children from district No. 87 to the school in district No. 21 was from fifteen to thirty minutes. It was also shown that about two miles was the greatest distance any of the children had to walk to reach the highway, and that shelters were to be erected to be used by the children while awaiting the arrival of a bus; that the attendance of children from the territory of district No. 87 to the

school in district No. 21 had been greater since the consolidation of the district than the attendance at the school in district No. 87 before such consolidation.

District No. 87 had no outstanding indebtedness, while district No. 21 had an outstanding indebtedness of $34,000, which had been incurred in the erection of school buildings. It was shown, however, that the revenue exceeded the current expenses which included the incidental expenses, teachers' salaries, and interest on bonds, and from the excess revenue the school authorities had been able to retire several thousand dollars of the outstanding bonds. One of the complaints made by the witnesses for the appellees was that the negro school in district No. 87 had been reduced from a six months' to a five months' term, but it was also stated by these witnesses that the person principally interested had been promised that the same kind of a school for the negroes should be maintained as had been before.

Prior to the consolidation, district No. 87 had only a ten-mill levy, and it appears that fear of an increase in the tax rate was one of the principal reasons for the circulation and presentation of the three petitions filed before the county board after the first petition for consolidation. It was the opinion of the trial judge and one of the reasons given for his judgment that the school in district No. 21 was overcrowded. While a great number of children attended that school, we have been unable to discover the evidence upon which this opinion was based, and, if the entire school population of district No. 87 should regularly attend the school in district No. 21, it could not greatly augment the number, for these were only fifteen.

The county board of education, with the advice and information furnished it by the county superintendent of schools, has been deemed by the Legislature the tribunal most competent to pass on such questions as are here presented, and in reviewing its action every legitimate presumption must be indulged in to sustain its orders,

and upon those who would have same vacated for an abuse of discretion rests the burden of establishing it. We are of the opinion that under the evidence adduced in this case it cannot be said that the county board acted arbitrarily within the rule before stated, and therefore the judgment of the trial court is reversed, and the cause remanded, with directions to affirm the order of the county board of education.